UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL KONCZAK,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JOHNSON CONTROLS, INC.,<br>　　　　　　　Defendant. | Case No. 24-10431<br>Honorable Shalina D. Kumar<br>Magistrate Judge Curtis Ivy, Jr. |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 4)**

I. **INTRODUCTION**

Plaintiff Michael Konczak ("Konczak") commenced this action in Oakland County Circuit Court to recover commission payments allegedly owed to him from his employer, defendant Johnson Controls, Inc. ("JCI"). ECF No. 2. JCI removed the action to this Court and filed a motion to dismiss Konczak's complaint for failure to state a claim upon which relief may be granted. ECF Nos. 2, 4. The motion has been fully briefed,[1] and the

---

[1] Konczak moves for leave to file a supplemental brief to provide the Court with supplemental authority from a state court addressing the same issues from other JCI sales representatives. ECF No. 10. JCI opposes that motion, arguing that the state court's denial of the motion to dismiss before it was not relevant to this Court because that motion was based purely on a state procedural rule that differs materially from Federal Rule of Civil

Court heard oral argument from the parties. For the following reasons, the Court grants defendant's motion.

## II.     FACTUAL BACKGROUND

Konczak works for JCI as a commissioned salesperson, selling HVAC systems to commercial enterprises. ECF No. 2, PageID.66. The complaint alleges that Konczak has been a JCI HVAC account executive since 2005 and is currently its top-ranked salesperson in North America. *Id*. JCI pays Konczak commissions under a written incentive plan, which JCI issues each fiscal year, beginning October 1 and ending the following September 30. *Id*. at PageID.66-67.

Under the 2023 "Incentive Plan—HVAC Smart Building, Complex and Account Sales" (the "2023 Plan"), JCI paid a portion of the sales commission whenever a sale was booked, i.e., when JCI assigned an internal contract number to the job. *Id*. at PageID.67. JCI paid the remaining commission as several contractual milestones were achieved, with the final commission paid when the job was paid in full and transferred to warranty. *Id*. Because commercial HVAC sales are large projects which often take a year or longer to complete, under the 2023 Plan and the

---

Procedure 12(b)(6). ECF No. 11. The Court **GRANTS** Konczak's motion for leave to file its supplemental authority (ECF No. 10) and has considered that authority as part of this decision.

several annual plans before it, some remaining and final commission payments are made in the fiscal years following the initial commission payment at booking. *Id*.

Konczak alleges that he booked $26 million of sales in 2023 and that he expected approximately $371,337 in commissions for booked but incomplete projects at the close of fiscal year 2023. *Id*. at PageID.68. He also alleges that "[w]hether the project completed in 2024, 2025, or beyond, according to the 2023 Plan and all prior plans. . . , [Konczak] need only be employed at the time of project completion to receive payment of the commission." *Id.* at PageID.68-69.

In November 2023, JCI announced its 2024 Incentive Plan (the "2024 Plan"). *Id*. at PageID.69. Under the 2024 Plan, unlike its predecessors, all commissions are paid at the time of booking, regardless of when the project completes and goes to warranty. *Id*. In another departure from previous plans, the 2024 Plan discontinued JCI's practice of paying commissions on open but incomplete contracts. *Id*.

Konczak alleges that the 2024 Plan unlawfully deprives him of 70% of his earned commissions from fiscal year 2023 and prior years, amounting to more than $380,000. *Id*. at PageID.70. Konczak's complaint seeks to recover these commissions, alleging a violation of the Michigan Sales

Representative Commission Act, M.C.L. 600.2961 (Count I), breach of contract (Count II), failure to pay commissions to the procuring cause (Count III), promissory estoppel (Count IV), and unjust enrichment (Count V). *Id.* at PageID.70-75.

JCI moves to dismiss Konczak's complaint, arguing that the 2023 commissions Konczak seeks were not earned and thus not payable on the date the 2023 Plan terminated and that JCI exercised its contractual right to modify its incentive plan, and implement a different commission structure that did not provide payment for unearned commissions for contracts booked under prior plans. ECF No. 4. Specifically, JCI contends that it was not contractually obligated to pay Konczak's unearned commissions for 2023 under either the 2023 Plan or the 2024 Plan thereby defeating Konczak's statutory and breach of contract claims (Counts I and II). JCI further argues that Konczak's promissory estoppel and unjust enrichment claims (Counts IV and V) fail as a matter of law because the existence of express contracts governing the subject matter, i.e., the 2023 and the 2024 Plans, forecloses recovery under these quasi-contractual theories. JCI also contends that the procuring cause doctrine does not apply to Konczak because he remains employed by JCI and because JCI's commission plans address the payment of post-termination commissions. *Id.*

## III. DISCUSSION

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Golf Village N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted). Courts construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor. *Id.* at 617 (citing *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)).

A motion to dismiss tests the initial legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, the allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-56).

> As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56. There are, however, exceptions to this general rule. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to the plaintiff's claim. Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.

*Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *see also Benedettini Cabinets, L.P. v. Sherwin-Williams Co.*, 695 F. Supp. 3d 948, 954 (N.D. Ohio 2023) (agreements integral to the parties' dispute may be considered without converting a motion to dismiss to one for summary judgment).[2]

### A. Breach of Contract

Konczak argues that JCI breached the 2023 Plan by retroactively eliminating commissions he earned for his 2023 sales. Referencing this

---

[2] Konczak filed a notice of supplemental authority referring this Court to *Moyer v. Gov't Employees Ins. Co.*, 114 F.4th 563 (6th Cir. 2024). ECF No. 15. Konczak argues that this case is relevant and persuasive because it determined that a court may not rely upon documents supplied by the defendant to dismiss a breach of contract claim under Rule 12(b)(6) if the parties dispute whether the attached documents are the full and complete contract. *See Moyer*, 114 F.4th at 568. But, as noted by JCI, Konczak never contested or even questioned the completeness or authenticity of the 2023 and 2024 Plan submitted by JCI. ECF No. 16. Nor do the versions of the 2023 and 2024 Plan provided by JCI appear on their face to be incomplete, as did the documents at issue in *Moyer*. *See id.* at 569; ECF No. 4-2. Because Konczak did not support or even assert any authenticity objections to the contract documents JCI attached, or raise any legitimate questions about their completeness, the Court finds *Moyer* inapposite to this case. *See Moyer*, 114 F.4th at 568.

chart,

| | FY23 Install & L&M Pay Timing | |
|---|---|---|
| Incentive Component | Payment Timing | |
| **A** Secured Volume | Paid at month end; one month following the month of booking | |
| Executed Margin | **B** 1. 30% paid up front at month end, one month following the month of booking | |
| | **C** 2. Payments continue to be made as cash is collected from 30% to 65% | |
| | **D** 3. Remaining paid at time of transfer (100% cash collected) | |

ECF No. 4-2, PageID.155, Konczak contends that the Plan "contemplated that commission was earned at the time the install contract was booked, and the commission was to be calculated under the [2023 Plan] and paid out over time, even after the close of the fiscal year." ECF No. 5, PageID.241.

The parties agree that "the terms of a contract must be enforced as written where there is no ambiguity." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (1999). Here, as JCI argues, the express terms of the 2023 Plan dictate that the "[i]ncentive on a contract is not actually earned until transfer and reconciliation."[3] *Id*. at PageID.174. It maintains that at the expiration of the 2023 Plan on September 30, 2023, Konczak's expected future commissions for sales he booked during the fiscal year

---

[3] Likewise, the second 50% increment of the High Producer Incentive (under the 2023 Plan) is deemed earned when payable, at the end of the fiscal year following the fiscal year in which the first increment was paid. *Id*. at PageID.170.

were not earned and thus not owed or due to Konczak by JCI. *See id.* at PageID.182.

Konczak does not dispute that the 2023 booked sales for which he did not receive commission had not transferred and reconciled before the 2023 Plan expired. Rather, he argues that the 2023 Plan and many previous plans permitted commissions for booked projects to be paid in full when the project completed, even if those payments were to be paid in subsequent fiscal years. Indeed, Konczak cites to the 2023 Plan's "Grandfathered' Contracts" (sic) provision, which states that "[a]ll open contracts secured prior to the effective date of this plan will not earn sales incentives under this Plan and will be paid in accordance with the plan in effect at time of booking." ECF No. 4-2, PageID.173.

But the 2024 Plan did not include a grandfathered contracts provision because JCI intended the 2024 Plan as a "full sales incentive plan redesign" and deemed "[a]ll elements of the [2023 Plan] (and previous) plan designs" extinguished and replaced by the fiscal year 2024 sales incentive plan. ECF No. 4-4, PageID.212. Unfortunately for Konczak, Michigan law and the terms of the 2023 Plan entitled JCI to unilaterally revamp its incentive program for fiscal year 2024.

Under Michigan law, although an employer cannot "retroactively modify its policy in order to deny [an employee] a contractual right to which the employee was already entitled" such that "a change in a compensation policy which affects vested rights already accrued may give rise to a cause of action in contract," the right to future, unvested commissions depends upon the contract between the employer and the sales representative. *Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 373 (Mich.Ct.App. 2019) (internal quotation omitted); *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 656 (Mich. 1991). Further, absent an explicit promise regarding the permanency or duration of its compensation policy, an employer may enact changes to its policy. *See id*. at 655-56; *see also Toussaint v. Blue Cross Blue Shield of Mich.*, 292 N.W.2d 880, 894-95 (employees have no legitimate expectation that any particular policy will remain in force if employers make known to their employees that personnel policies are subject to unilateral changes by the employer).

Much like the circumstances in this case, plaintiff insurance sales agents in *Dumas* sued defendant insurance association after it unilaterally altered the terms upon which plaintiffs were compensated. *Id*. at 655. The *Dumas* court noted that defendant made no explicit promises to plaintiffs regarding the duration of the former compensation policy and that, without

an express promise of permanency, defendant was entitled to execute a change to its compensation program. *Id*. at 656. Because the plaintiffs' renewal commissions did not vest when the original policies sold, plaintiffs could not maintain a contract action for the higher commissions available under the contract in place when the original policies sold. *See id*.

Konczak argues that *Dumas* is distinguishable from his case because *Dumas* addressed a change in commission structure for future sales requiring future work. *See* ECF No. 5, PageID.248-49. He contends that "*Dumas* does not give the employer permission to retroactively change how commission is paid on *prior sales*." *Id*. at 249 (emphasis in original). Konczak correctly notes that the commissions at issue in *Dumas* were for future renewals of the policies plaintiffs sold, but the *Dumas* holding hinged on whether the commissions were vested or unvested, not whether they were for past or future sales. *See Dumas*, 473 N.W.2d at 656. Just as the renewal commissions did not vest upon the sale of original policies in *Dumas*, under the express terms of the 2023 Plan, the unpaid portion of Konczak's 2023 commissions were not deemed earned until future production, delivery, and payment benchmarks occurred. *See* ECF No. 2, PageID.67.  In other words, Konczak's unpaid commissions did not vest at

the time of the sales, and he did not have a contractual right to the unpaid commissions from his 2023 sales when the 2023 Plan expired.

Under the 2023 Plan, JCI had expressly reserved the right to impose a new compensation plan. ECF No. 4-2, PageID.183 (JCI "reserves the right to change this incentive plan for this Plan Year and any subsequent Plan Year"). Accordingly, JCI merely exercised its prerogative to unilaterally change its compensation policy by altering the incentive scheme with the 2024 Plan. *See Dumas*, 473 N.W.2d at 663.

Konczak further argues that JCI's continued deduction of chargebacks from 2023 commissions in 2024 conflicts with its claim that no further commission payments are due under the expired 2023 Plan. According to Konczak, "Defendant cannot have it both ways—claim that because fiscal year 2023 is over they are no longer obligated to pay Plaintiff for payments due after September 30, 2023 but then charge back for sales cancelled after September 30, 2023." ECF No. 5, PageID.252. But Konczak's argument again overlooks the express language of the plans. The 2023 Plan provides: "To the extent that incentive is paid on a contract that is later cancelled…, the incentive will be deducted from any of the salespersons (sic) future incentive payments…." ECF No. 4-2, PageID.173. JCI also "reserves the right to deduct overpayments from future incentive

payments" and that these "chargebacks…will not exceed the total amount of incentive paid on that contract." *Id*. at PageID.174. Although JCI's 2024 Plan discontinued its practice of paying commissions on open but incomplete contracts, it sustained its chargeback policy. "Amounts from sales opportunities secured in the past and which are cancelled…during the plan year[] will be deducted from your total annual amount…." *Id*. at PageID.204. The express terms continuing chargebacks do not contradict or negate the express terms terminating the payment of commissions on open contracts from prior years, even if those terms, in combination, are harshly one-sided in favor of JCI.

In sum, Konczak's expected future commission payments for sales he booked in 2023 were not yet earned, or vested, under the terms of the 2023 Plan when that plan expired. The 2024 Plan did not, as previous plans had, extend the terms of earlier plans for open contracts booked under those expired plans. Accordingly, Konczak's anticipated commissions were not payable under the terms of the 2023 or the 2024 Plan, and JCI's refusal to pay Konczak's expected commissions for fiscal year 2023 does not violate the express terms of its written incentive plans.

**B. Breach of Duty of Good Faith and Fair Dealing**

Alternatively, Konczak argues that JCI's refusal to pay his anticipated commissions breaches the duty of good faith and fair dealing that JCI owed to Konczak. A covenant of good faith and fair dealing is an implied promise contained in every contract that a party shall not do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the agreement. *Hammond v. United of Oakland, Inc.* 483 N.W.2d 652, 655 (Mich. Ct. App. 1992). The implied promise applies to discretionary performance under the contract and requires a party to exercise his discretion honestly and in good faith. *Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (Mich. Ct. App. 1984). But "'[t]he obligation of good faith cannot be employed…to override express contract terms.'" *Dietrich v. Bell, Inc.*, 554 F. App'x 418, 424 (6th Cir. 2014) (quoting *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 657 (6th Cir.2000)); *accord Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826-27 (6th Cir. 2003). If the contract contains the parties' expression of their agreement, a court cannot invoke the doctrine of good faith and fair dealing to supersede that expression. *Id*. at 827.

As discussed in *Dietrich*, the case of *Militzer v. Kal-Die Casting Corp.* is illustrative. 554 F. App'x at 425 (citing 200 N.W. 2d 323, 324-25 (Mich.

Ct. App. 1972)). In *Militzer*, after "the defendant corporation altered the structure to reduce the plaintiff's commissions[,] [t]he court said, '[i]f defendant had desired to limit plaintiff's commission in terms of time or amount it could have done so, preferably in writing, in the original agreement.'" *Dietrich*, 554 F. App'x at 425 (quoting *Militzer*, 200 N.W. 2d at 325). This is precisely what JCI did here.

The 2023 Plan explicitly spells out when and under what circumstances a commission is earned and thus due and owing to the sales representative. ECF No. 4-2, PageID.174. The 2023 Plan's "Grandfathered Contracts" clause specifically provided for the payment on open contracts secured prior to the effective date of the 2023 Plan in accordance with the plan in effect at time of booking. The 2023 Plan unambiguously reserved to JCI the right to change its incentive program in fiscal year 2023 or any subsequent plan year and the 2023 Plan, including the Grandfathered Contracts provision, expired by its terms on September 30, 2023. *Id*. at PageID.182-83. Invoking the duty of good faith and fair dealing to extend the commission-payment terms of the expired 2023 Plan would thus directly override the express terms of that plan. *Id*. at PageID.173. Accordingly, Konczak's claim on the theory of implied covenant of good faith and fair dealing fails as a matter of law.

### C. Promissory Estoppel and Unjust Enrichment

Konczak also pursues relief under the quasi-contractual theories of promissory estoppel and unjust enrichment. Konczak argues, without authority, that these claims should survive JCI's motion to dismiss because they would provide relief if the express contract were deemed illusory and thus unenforceable.

To the contrary, courts have long held that promissory estoppel may not be used to override the express agreement of the parties contained in written agreements. *APJ Assocs., Inc. v. North Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003). The doctrine of promissory estoppel is not applicable if the performance satisfying the detrimental reliance requirement is the same performance constituting the consideration of a written commercial contract. *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 395 (E.D. Mich. 2000); *see also BidGroup, L.L.C. v. GKN Sinter Metals, Inc.*, 2007 WL 172317, at *2 (Mich. Ct. App. Jan. 23, 2007) ("[W]here an express contract addresses the pertinent subject matter, the law will not recognize…recovery under a theory of promissory estoppel").

Similarly, under Michigan law, the existence of an express contract between the same parties on the same subject matter precludes an unjust enrichment claim. *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W. 2d

898, 904 (Mich. App. Ct. 2006). More specifically, employers who exercise their prerogative to change future compensation cannot, as a matter of law, be unjustly enriched. *See Dumas*, 473 N.W.2d at 663. The 2023 and 2024 Plans are express contracts controlling the payment of commissions for JCI HVAC sales; accordingly, Konczak's quasi-contractual claims fail as a matter of law, warranting their dismissal.

### D. Remaining Claims

Konczak failed to respond to JCI's arguments that his claims under the MSRCA and the procuring-cause doctrine should be dismissed. A non-moving party waives an argument by failing to address it in its response brief. *See Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 948-49 (W.D. Mich. 2009). Indeed, when a party fails to respond to an argument in a motion to dismiss, "the [c]ourt assumes he concedes this point and abandons the claim." *PNC Bank, N.A., v. Goyette Mech. Co., Inc.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015). Accordingly, dismissal of these claims is appropriate.

### IV. CONCLUSION

For all these reasons, the Court finds that Konczak's breach of contract and quasi-contractual claims (Counts II, IV, and V) fail as a matter of law and that he has abandoned his claims under the MSRCA and the

procuring-cause doctrine (Counts I and III). That Konczak will not be paid his justifiably anticipated commissions from fiscal 2023 is lamentable, but JCI's decision to so deprive him, though perhaps unfair, is not unlawful. The Court thus **GRANTS** JCI's motion to dismiss (ECF No. 4) and **DISMISSES** the complaint (ECF No. 2).

                                                 s/Shalina D. Kumar
                                                 SHALINA D. KUMAR
                                                 United States District Judge

Dated: March 14, 2025